**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

KELVIN BATISTE                                    CIVIL ACTION NO. 6:17-cv-251

VS.                                               SECTION P

                                                  JUDGE REBECCA F. DOHERTY

SHERIFFS OFFICE                                   MAGISTRATE JUDGE WHITEHURST
ST. MARTIN PARISH, ET AL.

### MEMORANDUM ORDER

Pro se plaintiff Kelvin Batiste, proceeding in forma pauperis, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983, on February 8, 2017.  Plaintiff is a pre-trial detainee at the St. Martin Parish Jail (SMPJ) awaiting trial on unknown charges. He makes several claims against the St. Martin Parish Sheriffs Office, E.J. Melancon, Warden at LaSalle Parish Correctional Center, LaSalle Parish Correctional Center (LPCC) and St. Martin Parish Correctional Center.  This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

### I.  Statement of the Case

On October 20, 2016, plaintiff, a pre-trial detainee at SMPJ, was informed that he would be transferred to LPCC, because they were painting SMPJ and some inmates were to be moved. [Rec. Doc. 4, p. 6] As he was not serving any time for the state, plaintiff questioned why he was being transported to a DOC facility and admittedly did not pack his belongings, despite being ordered to do so. *Id.*  The Warden and Captain, after being questioned and losing patience, allegedly ordered the pepper ball gun to be retrieved, at which time "they" began opening fire into plaintiff's cell. *Id.* Plaintiff was then handcuffed, forced into the corridor of his dorm and then drug out by the

handcuffs, which were cutting into his wrists. *Id.* Warden Melancon then ordered deputies to shackle plaintiff's ankles at which time he was picked up by the chains on the handcuffs and shackles and moved into the elevator and put into the transportation van to LPCC. *Id.*

On November 10, 2016, presumably while at LPCC, plaintiff was attacked by 3-4 DOC inmates and suffered a broken jaw. [Rec. Doc. 4, p. 4] He asked a deputy for medical attention and, after being questioned for 10-15 minutes, he was brought to the nurse's office. *Id.* The nurse ultimately confirmed that plaintiff's jaw was broken and 2-3 hours later, he was transported to LSU Medical Center in Shreveport. *Id.* He was given pain medication and sent back to the jail, where he was placed on an Ensure only diet, as he was unable to chew. *Id.* He was put on disciplinary lock-down, written up for fighting, and placed on commissary restriction. *Id.*

He alleges that he was given no medical attention or medication from November 11, 2016-November 16, 2016. *Id.* He also did not receive medication on November 28, 2016, December 3, 2016 and December 7, 2016. [Rec. Doc. 4, p. 5]

Between November 18, 2016, and December 7, 2016, he was not given Ensure on the following dates:

| | |
|---|---|
| 11/11/16 | No Ensure for lunch or dinner |
| 11/18/16 | No Ensure for dinner |
| 11/20/16 | No Ensure for breakfast or lunch |
| 11/21/16 | No Ensure for breakfast |
| 11/24/16 | No Ensure for breakfast |
| 11/25/16 | No Ensure for Breakfast |
| 11/29/16 | No Ensure for lunch or dinner |
| 11/30/16 | No Ensure for breakfast |
| 12/1/16 | No Ensure for breakfast |
| 12/2/16 | No Ensure for breakfast |
| 12/3/16 | No Ensure for breakfast, lunch or dinner |
| 12/4/16 | No Ensure for breakfast, lunch or dinner |
| 12/5/16 | No Ensure for breakfast |

| 12/6/16 | No Ensure for breakfast or lunch |
| 12/7/16 | No Ensure for breakfast or lunch |

On December 29, 2016, he had jaw surgery. *Id.*

## II. Amend Order

**A.     Rule 8**

Rule 8 of the Federal Rules of Civil Procedure does not require explicit detail, but it does require a plaintiff to allege some facts which support the conclusion that his constitutional rights were violated by the defendants. In other words, a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949,  173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).  At the very least, plaintiff should provide–

(1)  the name of <u>each person</u>  who allegedly violated plaintiff's constitutional rights;

(2)  a description of what actually occurred or <u>what each defendant did to violate plaintiff's rights</u>;

(3)  <u>the place and date that each event occurred</u>; and

(4)  a description of the <u>alleged injury</u> sustained as a result of the alleged violation.

**B.     Parties**

**1. LPCC and SMPJ**

Plaintiff sued  LPCC and SMPJ.  Fed.R.Civ.P. Rule 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether  LPCC and SMPJ have the capacity to be sued in this action.  Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term

is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership." La. Civ.Code art. 24. Neither LPCC or SMPJ are juridical persons and therefore plaintiff's claims against these defendants should be dismissed. See *Dailet v. St. Bernard Parish Prison,* 2013 WL 5533142 (E.D. La. 2013); see also *Wetzel v. St. Tammany Parish Jail,* 610 F.Supp.2d 545, 549 (E.D. La. 2009); *Folden v. West Carroll Detention Center,* 2013 WL 5577198, at \*1 (W.D. La. 2013). Plaintiff should amend his complaint to either dismiss these defendants or provide facts to establish that they are indeed juridical persons.

### 2. LPCC and SMPJ Wardens

Plaintiff has named the E.J. Melancon, Warden at SMPJ, and the Warden at Lasalle Parish Correctional Center as defendants. While he makes specific allegations of constitutional violations on the part of Melancon, he does not make any allegations against the LPCC Warden. "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; and (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir.1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1957, 131 L.Ed.2d 849 (1995). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.), *cert. denied*, 464 U.S. 897, 104 S.Ct. 248, 78 L.Ed.2d 236 (1983). In other words, to the extent that plaintiff seeks to sue the LPCC Warden in his supervisory capacity, he must allege facts sufficient to demonstrate either personal involvement or the implementation of unconstitutional policies by the defendant.

### 3. St. Martin Parish Sheriffs Office

A Louisiana parish sheriff's office is not a legal entity capable of being sued. *Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 283 (5th Cir.2002); *Causey v. Parish of Tangipahoa*, 167 F.Supp.2d 898, 904 (E.D.La.2001); *Wetzel v. St. Tammany Parish Jail*, 610 F.Supp.2d 545, 548 (E.D.La.2009); *Ruggiero v. Litchfield*, 700 F.Supp. 863, 865 (M.D.La.1988). Accordingly, the Sheriffs Department of St. Martin Parish should be dismissed.

## C.    Claims

In his request for relief, plaintiff states that he "would like the court to make sure that LaSalle Parish Correctional Center is held responsible for not ensuring the safety of a pre-trial inmate or making sure that I was issued the proper meals and medical attention when needed." He also asserts a claim against SMPJ for transporting a pre-trial inmate to a D.O.C. facility against his will and for injuring him with their weapons and force. He asks to be compensated for his physical and mental pain and suffering.

### 1. Failure to Protect

Plaintiff implies that LPCC may be liable for failing to protect him from the fight that occurred on November 10, 2016, during which plaintiff's jaw was broken. When a pre-trial detainee, such as the plaintiff herein, alleges a failure to protect claim, it arises under the Fourteenth Amendment's due process clause and the standard for judicial review of such claims is "deliberate indifference." *Hare v. City of Corinth*, 74 F.3d 633, 638 (5th Cir.1996) (*en banc*). In other words, plaintiff's right to protection from violence is measured by the standard of subjective deliberate indifference enunciated by the Supreme Court in *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under that standard, a prison official is not liable for failing to protect

either an inmate or a detainee unless the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In order to prevail, plaintiff must establish that the defendant officials: (1) were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and, (2) actually drew the inference. *Farmer*, 511 U.S. at 837. Negligent inaction can never be the basis of a failure to protect claim. *Farmer*, 511 U.S. at 835; *Hare*, 74 F.3d at 642. The legal conclusion of deliberate indifference must rest on facts clearly evincing "wanton" actions on the part of defendants. *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir.1985). In *Smith v. Wade*, 461 U.S. 30, 39 n. 8, 103 S.C. 1625, 1632 n. 8, 75 L.Ed.2d 632 (1983), the Court approved the following definition of wanton: "'Wanton means reckless – without regard to the rights of others ... Wantonly means causelessly, without restraint, and in reckless disregard of the rights of others. Wantonness is defined as a licentious act of one man towards the person of another, without regard to his rights; it has also been defined as the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure.' 30 American and English Encyclopedia of Law 2-4 (2d ed. 905) (footnotes omitted)."

Plaintiff's complaint does not name a specific person or provide enough factual support to establish deliberate indifference on the part of any specific prison official. Nothing suggests that any official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed; nothing suggests that any official actually drew such an inference. Accordingly, his complaint should be amended to provide additional information to support a claim.

### 2. Failure to Provide Proper Diet and Medical Care

Plaintiff admits that he received medical treatment, had surgery on his broken jaw and received medication. At best, he alleges a claim for delay in medical care. He also asserts that jail officials failed to provide his Ensure diet for every meal on several days in November and December.

Jail officials must provide "humane conditions of confinement, ensuring that inmates receive adequate food, clothing, shelter, … medical care," and hygiene. *Palmer v. Johnson*, 193 F.3d 346, 351-52 (5th Cir. 1999). The guarantee of "humane conditions of confinement" is found in the Due Process Clause of the Fourteenth Amendment for pretrial detainees and in the Cruel and Unusual Punishment Clause of the Eighth Amendment for convicted prisoners. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). F

For pretrial detainees, the proper legal standard depends on whether a claim challenges a "jail condition" or whether it alleges an "episodic act or omission." *Id.* at 645. While "jail condition" cases are analyzed under the reasonable relationship test of *Bell v. Wolfish*, 441 U.S. 520, 539, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979), "episodic" cases are analyzed under the deliberate indifference standard of *Farmer v. Brennan*, 511 U.S. 825, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994). *Id.* "To be deliberately indifferent, a prison official must 'know[] of and disregard[] an excessive risk to inmate health or safety[.]'" *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994)). Therefore, "a prison official must have a 'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297, 115 L. Ed. 2d 271, 111 S. Ct. 2321 (1991)). Furthermore, a prison "official's response [must] indicate[] that the official subjectively intended that harm occur." *Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001).

For example, deliberate indifference to the serious medical needs of a prisoner may be manifested by a prison official's delay or denial of access to medical care or intentional interference with treatment once prescribed. *Estelle v. Gamble*, 429 U.S. 97, 104, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976). An allegation of negligence or malpractice, however, does not state a medical care claim. *Hall*, 190 F.3d at 697 (citing *Estelle*, 429 U.S. at 105). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the [prohibited conduct]." *Whitley v. Albers,* 475 U.S. 312, 319, 89 L. Ed. 2d 251, 106 S. Ct. 1078 (1986). Whether a deprivation falls below the Eighth Amendment's threshold depends on how severe the deprivation is and how long it lasts. *Id.*

While there may have been some delays in providing plaintiff with his medication, mere delay in receiving medical care is not in and of itself a constitutional violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990); *Simons v. Clemons*, 752 F.2d 1053, 1056 (5th Cir. 1985).

In *Black v. Washington*, 09-1966, 2010 WL 793448 (W.D. La. March 2, 2010), a prisoner brought suit against prison officials complaining of delays in providing prescription medication. According to his complaint, despite being prescribed prescription medication to treat his glaucoma, subsequently submitting five (5) inmate request forms and making numerous trips to the infirmary, he experienced an 18 day delay in receiving one medication and a one week delay in receiving the other. *Id.* At *3. The Court found that the plaintiff did not allege that these "moderate delays" were either purposeful or that they resulted in substantial harm, and, accordingly, dismissed plaintiff's claims. *Id.*

In *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir.1981), the Fifth Circuit Court of Appeals stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is

one of medical necessity, not of desirability. The fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. Prisoners are not constitutionally entitled to the best medical care that money can buy. *See Mayweather v. Foti*, 958 F.2d 91 (5th Cir.1992); *Woodall, supra*.

The same is true when an inmate misses one or even several meals. *See Bellamy v. Bradley*, 729 F.2d 416, 419-20 (6th Cir.), cert. denied, 469 U.S. 845, 105 S. Ct. 156, 83 L. Ed. 2d 93 (1984) (missing meals for a day); *Stoetzner v. Tangipahoa Parish Sheriff's Office,* 2011 U.S. Dist. LEXIS 15668, 2011 WL 603676 (E.D. La. Jan. 7, 2011); *Hill v. Gusman,* 2006 U.S. Dist. LEXIS 101977 (E.D. La. Oct. 16, 2006)*; Veteto v. Miller*, 829 F. Supp. 1486, 1495-96 (M.D. Pa. 1992) (allegations of missed meals during brief period without allegations of going hungry); *Morrison v. Martin*, 755 F. Supp. 683, 686 (E.D.N.C.), aff'd, 917 F.2d 1302 (4th Cir. 1990) (generalized allegations of missed meals); *Moss v. Ward*, 450 F. Supp. 591, 596, 598 n.8 (W.D.N.Y. 1978) (deprivation of one meal or a day's meals); *Herring v. Superintendent, Danville City Jail*, 387 F. Supp. 410, 412 (W.D. Va. 1974) (missing breakfast).

Moreover, Plaintiff's complaint does not name a specific person who knew of and then disregarded an excessive risk of injury to him. Plaintiff should amend to allege facts to show that a specific defendant(s) purposefully delayed providing prescribed medications or Ensure meals and any injury or lasting complications resulting from the delay in receiving his same. *See Easter v. Powell,* 467 F.3d 459 (5th Cir. 2006). Plaintiff must allege facts to show that each of the defendants knew of and then disregarded an excessive risk of injury to him, and, that they were aware of the facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they drew that inference.

### 3. Transporting to DOC Facility Against Plaintiff's Will

Plaintiff asks this Court to hold SMPJ responsible for transporting him to a "DOC facility against his will." However, the Supreme Court has held that inmates have no right to be confined at any particular penal institution within the state. *Meachum v. Fano*, 427 U.S. 215, 224, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976); *see also Maddox v. Thomas*, 671 F.2d 949, 950 (5th Cir. 1982). Accordingly, plaintiff should dismiss this claim.

### 4. Excessive Force

Plaintiff further alleges excessive force at SMPJ in connection with his transfer to LPCC.

At the time of this incident, Plaintiff was a pretrial detainee. Thus, his claim that officers used excessive force against him is properly characterized as asserting a violation of his substantive due process rights under the Fourteenth Amendment. *Odoms v. Weber*, 2010 WL 3802160, *2 (E.D. La 2010) (citing *Petta v. Rivera*, 143 F.3d 895, 911 (5th Cir.1998) ("[W]here a plaintiff's excessive force claim, whether he be a prisoner, arrestee, detainee, or an innocent bystander of tender years, falls outside the specific protections of the Bill of Rights, that plaintiff may still seek redress under the due process clause of the Fourteenth Amendment.") (*citing Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989)); *accord Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir.1998)).

Under the Fourteenth Amendment standard, the court must ask whether defendants' "actions caused [plaintiff] any injury, were grossly disproportionate to the need for action under the circumstances and were inspired by malice rather than merely careless or unwise excess of zeal so that [they] amounted to an abuse of official power that shocks the conscience." *Petta*, 143 F.3d at 902 (citation omitted). The " 'extent of injury is one factor' to be considered [along] with 'the need for application of force, the relationship between that need and the amount of force used' and other

10

factors, ... [but] the extent of injury is only one relevant factor and cannot be exclusively determinative under the ... substantive due process approach." *Id. (quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

To the extent the Eighth Amendment standard would apply, the appropriate inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at *3, (citing *Hudson*, 503 U.S. at 6; *accord Petta*, 143 F.3d at 901; *Flowers v. Phelps*, 956 F.2d 488, 491 (5th Cir.1992). Plaintiff need not show a significant injury to establish a constitutional violation; however, the extent of the injury may be considered in determining whether the force used was malicious, wanton or unnecessary. *Id.* In addition, "[t]he Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id. (*citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997) (quoting *Hudson*, 503 U.S. at 9–10)).

Moreover, plaintiff has not stated whether or not he was the subject of a disciplinary hearing or disciplinary charges arising out of the incidents in question. If he was, it may well be that a grant of relief on plaintiff's excessive force claims in this case would necessarily call into question the validity of any such disciplinary determination of guilt, and therefore, his present complaint may be premature. *See Hudson v. Hughes*, 98 F.3d 868 (5th Cir.1996) (civil rights claim that officers used excessive force during arrest could not be maintained where plaintiff's conviction of battery of officer, based on that incident, had not been invalidated because a finding in plaintiff's favor would necessarily imply the invalidity of plaintiff's arrest and conviction for battery of officer).

In the wake of *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 1589, 137 L.Ed.2d 906

11

(1997), the *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994) doctrine is now applied to the prison disciplinary setting. For this reason, if plaintiff was charged and convicted of a disciplinary violation, his excessive force claim may not be cognizable without a prior showing of favorable termination, that is, that the results of the disciplinary hearing (if any) have been overturned, either on administrative appeal, through *habeas*, or by some other means. *See also*, *Woods v. Smith*, 60 F.3d 1161, 1165 n. 16 (5th Cir.1995)(citing *Ordaz v. Martin*, 5 F.3d 529 (5th Cir.1993)(unpublished)).

Finally, he should amend to state <u>what, if any, injuries</u> he sustained as a result of the alleged use of force and identify the defendants by name and provide the information required by Rule 8 for each such defendant.

### 5. Metal Anguish

Plaintiff prays to be compensated for his physical and mental pain and suffering. 42 U.S.C. § 1997e(e) provides, "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The "physical injury" required by § 1997e(e) must be more than *de minimis* but need not be significant. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999)(*citing Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997). Accordingly, if plaintiff is unable to provide facts to establish more than a *de minimis* injury, relief for mental anguish is not available.

### III. Order

Before this court determines the proper disposition of plaintiff's claims, plaintiff should be given the opportunity to remedy the deficiencies of his complaint. *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Accordingly:

**IT IS ORDERED** that plaintiff amend his complaint within thirty (30) days of the filing of this order to cure the deficiencies as outlined above, and alternatively, dismiss those claims, requests for relief, or defendants plaintiff is unable to cure through amendment.

**Failure to comply with this order may result in dismissal of this action as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i) or under Rule 41(b) or 16(f) of the Federal Rules of Civil Procedure. Plaintiff is further required to notify the Court of any change in his address under LR 41.3.**

**THUS DONE AND SIGNED** in Chambers at Lafayette, Louisiana, this 24th day of May, 2017.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

13